LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
Shanshan Zheng (SZ 3301)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SAIZHANG GUAN and LONGBIN LI,
*on behalf of themselves and the Class,*

                    Plaintiffs,

        v.

UBER TECHNOLOGIES, INC.

                    Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

Jury Trial Demanded

---

       Plaintiffs SAIZHANG GUAN and LONGBIN LI (collectively, "Plaintiffs") bring this action individually and on behalf of all other persons similarly situated, by and through their attorneys, against Defendant, UBER TECHNOLOGIES, INC. ("Uber" or "Defendant"), and allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters based upon, *inter alia*, the investigation of counsel and public statements issued by Uber.

## INTRODUCTION

       1.     Uber provides car services through a smartphone application, which enables users to arrange and schedule transportation and/or logistics services with drivers (the "Uber drivers"). Founded in San Francisco in 2009 by Garrett Camp and Travis Kalanick, Uber has since undergone

tremendous expansion. The silicon valley company, now valued at $62.5 billion, provides car services in almost every major cities in the United States and 67 countries worldwide with over 1 billion in ridership.

2.      This class action seeks redress for Uber's deceptive acts or practices in its failure to make full reimbursement of tolls to Uber drivers who had paid such tolls out of pocket. Uber collects tolls from its customers and promises to pass on such funds to Uber drivers to fully reimburse them for tolls they had paid out of pocket. However, Uber assessed sales tax on such toll reimbursements, resulting in less than 100% reimbursement to Uber drivers as promised.

3.      Plaintiffs bring this class action lawsuit on behalf of themselves and a class of persons who worked as Uber drivers anywhere in the United States during the applicable limitations period up to and including the present (the "Class Period").

4.      Plaintiffs and the Class were deceived and misled by Defendant's failure to fully reimburse toll expenses incurred by Uber drivers. Defendant purposefully concealed the fact that it deducted sales tax on tolls, which are not subject to sales tax, and failed to fully reimburse Uber drivers for their out of pocket toll payments.

5.      As a result of Defendant's unfair, deceptive and fraudulent business practices, Plaintiffs and the Class have suffered injury in fact and damages, and Uber was unjustly enriched.

6.      Accordingly, Plaintiffs bring this action to redress damages to them and the Class due to Defendant's breach of contract, common law fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing, unjust enrichment, and violations of state statutes prohibiting unfair trade practices, including the New York Deceptive and Unfair Trade Practices Act.

## PARTIES

**Plaintiff Saizhang Guan**

7.      Plaintiff SAIZHANG GUAN ("Plaintiff GUAN") is a resident of, and domiciled in, Queens County in the State of New York.

8.      Plaintiff GUAN started working as an Uber driver from August 2015.

9.      Plaintiff GUAN is still currently working as an Uber driver.

10.     As an Uber driver, Plaintiff GUAN provided livery car services in the New York City metropolitan area.

11.     As an Uber driver, Plaintiff GUAN traveled through a number of toll roads and bridges on a daily basis, and his E-ZPass was charged each time.

12.     At all relevant times prior to January 2016, Plaintiff GUAN and Class members were damaged by Defendant's failure to reimburse the full amount of tolls collected from passengers and Defendant's purposeful concealment of such.

**Plaintiff Longbin Li**

13.     Plaintiff LONGBIN LI ("Plaintiff LI") is a resident of, and domiciled in, Queens County in the State of New York.

14.     Plaintiff LI started working as an Uber driver from October 2015.

15.     Plaintiff LI is still currently working as an Uber driver.

16.     As an Uber driver, Plaintiff LI provided livery car services in the New York City metropolitan area.

17.     As an Uber driver, Plaintiff LI traveled through a number of toll roads and bridges on a daily basis, and his E-ZPass was charged each time.

18.     At all relevant times prior to January 2016, Plaintiff LI and Class members were

damaged by Defendant's failure to reimburse the full amount of tolls collected from passengers and Defendant's purposeful concealment of such.

**Defendant**

19.     Defendant UBER TECHNOLOGIES, INC. is a business corporation organized under the laws of the state of Delaware, with its principal place of business at 1455 Market Street, San Francisco, CA 94103 and an address for the service of process at C/O National Registered Agents, Inc., 111 Eighth Avenue, New York, NY 10011.

## JURISDICTION AND VENUE

20.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

21.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the Unites States Constitution.

22.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

23.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute, N.Y. CVP. Law § 302, because they conduct substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiffs' claims arise out of Defendant operating, conducting, engaging in, or carrying on a business or business

venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state.

24.     Defendant is subject to personal jurisdiction in this Court because it has engaged in systematic and continuous contacts with this district by virtue of their business activities.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### Uber Failed to Make 100% Toll Reimbursement

26.     Uber provides for-hire vehicles ("Uber cars") which can be hailed and dispatched through its smartphone applications. On the user end, the Uber smartphone application ("Uber user app") allows the user to hail nearby Uber cars, the location of which can be seen on the user's smartphone.

27.     An Uber driver uses the driver end of the Uber smartphone application (the "Uber driver app") to receive dispatches and provide car services to Uber's users.

28.     Uber's users typically pay their travel fare with a credit card linked to their Uber user account, which is registered on the Uber user app. Uber then collects the travel fare from the user/customer and disburses a portion of the travel fare to the Uber driver who provided the car service. Uber typically makes a number of deductions before the proceeds of travel fare are ultimately disbursed to the Uber driver, including, *inter alia,* Uber's commission called "Uber fee," a "Black Car Fund" fee (Uber drivers' worker's compensation due), and sales tax.

29.     For example, Uber states on its own website that, for New York City, net payout to Uber drivers is calculated by subtracting from gross fares "8.15% sales tax," and "20% Uber fee," and "2.44% Black Car Fund."



*See* https://newsroom.uber.com/nyc/three-septembers-of-uberx-in-new-york-city/.

30.     Whenever a toll was incurred during a trip dispatched by Uber, or sometimes during a return trip after a drop-off, Uber charges the user/customer for the toll, which had typically been paid by the E-ZPass on the Uber driver's vehicle. *See* Uber's help page (help.uber.com) under the "UNDERSTANDING YOUR FARE" tab:



*See* https://help.uber.com/h/8262fdc7-5617-4406-b9f7-f411401a592e.

31.     While passing on tolls collected from users/customers to Uber drivers, Uber promised to reimburse Uber drivers 100% of tolls they had paid out of pocket. On Uber's website under the "FEES AND RATES" tab, Uber specifically states: **"The Uber fee does not apply to tolls. 100% of toll reimbursements will be included on your weekly payment statement."**





*See* https://help.uber.com/h/d96d7e5f-8695-4deb-8388-998dced79244.

32.     Uber's representation regarding the net payment to Uber drivers on its promotional webpage for its "New York City 2015 Guarantee" program is consistent with the above policy. Uber provided examples for how payments to Uber drivers are calculated:

| TYPE | DEFINITION | EXAMPLE 1 | EXAMPLE 2 |
|---|---|---|---|
| FARES | Base Fare, Time and Distance | $3,500 | $4,800 |
| SURGE | | $300 | $200 |
| CANCELATIONS | | $200 | $400 |
| TOLLS & SURCHARGES | | $0 | $100 |
| GROSS FARES | Fares + Cancelations + Surge + Tolls | $4,000 | $5,500 |
| UBER'S SERVICE FEE | 25% of Fares + Surge + Cancelations | $1,000 | $1,350 |
| SALES TAX | 8.15% of Gross Fares | $326 | $440 |
| BLACK CAR FUND FEE | 2.25% of Gross Fares | $90 | $121.50 |
| NET FARES | Gross Fares - Uber's Service Fee - Sales Tax - Black Car Fund | $2,584 | $3,588.40 |
| GUARANTEE PAYOUT IN MONTH WITH $5,000 GUARANTEE | | $2,416 | $1,411.60 |

*See* http://www.driveubernyc.com/2015h2guar/.

33.    In the above example provided by Uber, sales tax is calculated by multiplying gross fares by the 8.15% sales tax rate. In Example 1, Sales Tax = ($3,500+$300+$200) x 8.15% = $326, and in Example 2, Sales Tax = $(4,800+$200+$400) x 8.15% = $440. In both examples, Uber demonstrated that the category "Tolls & Surcharges" is reimbursed to the driver without being subject to sales tax.

34.    However, in reality, Uber did not make 100% toll reimbursement to Uber drivers because Uber deducted sales tax from toll reimbursement payments to Uber drivers.

35.    Tolls are by definition not subject to sales tax in New York City or in any other jurisdiction in the United States.

36.    Significantly, Uber purposefully concealed the fact that sales tax was deducted from toll reimbursement. Uber's payment statement for a specific trip was purposefully designed in a way such that Uber drivers would not notice that sales tax was deducted from their toll reimbursement.

**Example 1**

37.    As an example, Plaintiff SAIZHANG GUAN's payment statement for a trip from Manhattan and the John F. Kennedy airport on September 28, 2015, for which Uber charged a flat fare of $60, demonstrates how Uber failed to make 100% toll reimbursement as promised:

Screenshot from Plaintiff GUAN's iPhone

[English Translation]



## Trip Payment Statement

| | |
|---|---|
| Date/Time | September 28, 2015 5:49AM EDT |
| Trip No. | 387d365e-2cc6-49a1-9f36-0eb3c30d266b |
| Type | UberX |
| Payment | |
| Fare | 60.00 |
| Surcharges and toll | 5.54 |
| Deductions | |
| Uber Fee | (15.00) |
| Black Car Fund | (1.43) |
| Sales Tax | (5.34) |
| Payout | |
| Total | 43.77 |

38.    In the above example, the gross fare for the trip was $60.00, and sales tax deduction should have been $60.00 x 8.15% = $4.89. However, as shown above, Uber deducted ($60+$5.54) x 8.15% = $5.34 for sales tax, representing an overcharge of $5.34-$4.89=$0.45 by Uber. In this example, had Uber reimbursed Plaintiff GUAN 100% of all tolls levied, Plaintiff  GUAN would have received $44.22 instead of $43.77 in total payout:

$60    -    $60 x 25%    -    $60 x 8.15%    -    $1.43    +    $5.54 = **$44.22**

Gross Fare   -   Uber Fee   -   Sales Tax   -   Black Car Fund + 100% Toll = Total Payout

**Example 2**

39.     As another example, Plaintiff GUAN's payment statement for a trip on August 20, 2015 also demonstrates how Uber failed to make 100% toll reimbursement as promised:



40.     In the above example, the gross fare for the trip was $34.37+$10.31=$44.68, and sales tax deduction should have been ($34.37+$10.31)x8.15%=$3.64. However, as shown above, Uber deducted ($34.37+$10.31+$5.54) x 8.15%=$4.09 for sales tax, representing an overcharge of $4.09 - $3.64 = $0.45 by Uber. Again, had Uber reimbursed Plaintiff GUAN 100% of all tolls levied, Plaintiff GUAN would have received $35.31 instead of $33.86 in total payout:

$$34.37+$10.31 - $($34.37+$10.31)x25% - $($34.37+$10.31)x8.15% - $1.10 + $5.54 = $35.31

Gross Fare     -     Uber Fee     -     Sales Tax     -     Black Car Fund + 100% Toll = Total Payout

41.     In short, Uber underpaid its drivers whenever a toll is levied during a trip dispatched by Uber. The amount of underpayment is the amount of toll levied multiplied by the applicable sales tax rate. Such underpayment, though small, is considerable in the aggregate given that Uber's ridership is more than 100,000 each day in New York City alone.[1]

**Uber Deliberately Concealed Their Underpayment**

42.     Uber deliberately concealed the fact that it systematically underpaid Uber drivers. Uber never clearly stated how the deductions are calculated in their payment statement for each trip, nor in their weekly or monthly statements issued to Uber drivers.

43.     Uber knew and/or had reasons to know that it underpaid Plaintiffs and the Class.

44.     Plaintiffs and the Class entered into a contractual or employment relationship with Defendant.

45.     As a result of Defendant's deceptive acts or practices as described herein, Plaintiffs and the Class suffered damages.

**Uber's Arbitration Provision in Its Licensing Agreement Is Unconscionable and Unenforceable**

46.     Any arbitration provision Uber has made part of its licensing agreement with Plaintiffs and the Class is both procedurally and substantively unconscionable and is therefore unenforceable. *See, e.g., Mohamed v. Uber Techs., Inc.,* 109 F. Supp. 3d 1185 (N.D. Cal. 2015); *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2015 U.S. Dist. LEXIS 165182, at *21 (N.D. Cal. Dec. 9, 2015).

47.     Any arbitration provision Uber has made part of its licensing agreement with Uber drivers is procedurally unconscionable because (i) Uber's licensing agreement with Uber drivers

---

[1] Andrew Tangel and Austen Hufford, *Uber Logs Major Gains in New York City, Figures Show*, THE WALL STREET JOURNAL, October 25, 2015, *available at* http://www.wsj.com/articles/uber-logs-major-gains-in-new-york-city-figures-show-1445821132.

is an adhesion contract imposed and drafted by the party of superior bargaining strength and relegates the subscribing party only the opportunity to adhere to the contract or reject it, (ii) the opt-out right afforded under Uber's licensing agreement is illusory, (iii) the delegation clause within such licensing agreement is essentially hidden in the prolix printed form drafted by Uber, (iv) did not adequately disclose the disadvantages of arbitration, and (v) the Private Attorney General Act ("PAGA") waiver contained in such licensing agreement rendered the entire arbitration clause unenforceable.

48.    Any arbitration provision Uber has made part of its licensing agreement with Uber drivers is substantively unconscionable because (i) Uber unfairly required part of the arbitration costs be borne by Plaintiffs and the Class, and (ii) the non-severable PAGA waivers contained in such licensing agreement rendered the entire arbitration clause unenforceable.

49.    Notwithstanding the unenforceability of Uber's arbitration provision in any of its licensing agreements, Plaintiffs have opted-out of Uber's arbitration provision contained in the April 2015 Licensing Agreement, and the December 2015 Licensing Agreement. On February 1, 2016, Plaintiffs GUAN and LI emailed Uber at optout@uber.com and sent a letter via certified mail to Uber indicating that they elect to opt-out of Uber's arbitration provisions. *See* **EXHIBIT A**, Plaintiffs' opt-out letter to Uber.

## CLASS ALLEGATIONS

50.    Plaintiffs bring this action on behalf of themselves, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

>   All persons in the United States who worked as an Uber driver, incurred toll(s) and were entitled to receive 100% toll reimbursement from Uber but did not (the "Nationwide Class").

In the alternative to the Nationwide Class, Plaintiffs seek to represent the following state-specific class:

> All persons in the New York State who worked as an Uber driver, incurred toll(s) and were entitled to receive 100% toll reimbursement from Uber but did not (the "New York Class").

51.     <u>Numerosity</u>:  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe and on that basis allege that there are tens of thousands of members of the Class who worked as Uber drivers and were underpaid due to Defendant's deceptive acts or practices as described herein above.

52.     <u>Ascertainiblity</u>.  Class members can be easily identified from Defendant's database of Uber drivers' accounts and earning records.

53.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    i. whether Defendant failed to provide 100% toll reimbursement to Uber drivers;

    ii. whether Defendant's failure to provide 100% toll reimbursement is a breach of contract;

    iii. whether Defendant's failure to provide 100% toll reimbursement harmed Plaintiffs and the Class;

    iv. whether Defendant's conduct constitutes deceptive business acts and practices;

    v. whether, as a result of Defendant's omissions and/or misrepresentations of

material facts related to amount of toll reimbursement, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or value; and,

vi. whether Plaintiffs and Class members are entitled to monetary damages.

54.     Typicality:  All of Plaintiffs' claims are typical of the claims of the Class since Plaintiff and each member of the Class worked as an Uber driver, paid tolls which Defendant promised but failed to fully reimburse. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's failure to make such reimbursement and wrongful conduct alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class.

55.     Adequacy:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained competent counsel who is highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

56.     Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of the Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense

to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's database of Uber drivers' accounts and earning records.

57.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**CAUSES OF ACTIONS**

**COUNT I**

**BREACH OF CONTRACT**

**(On behalf of the Nationwide Class, or Alternatively the New York Class)**

58.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

59.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

60.     A contract exists between Plaintiffs and the Class members, and Defendant. Plaintiffs and the Class performed their obligations under the contract by performing car services for Uber's users/customers as they were dispatched by Uber.

61.     Defendant's promise to provide 100% toll reimbursement to Plaintiffs and the Class was part of their bargained-for exchange and induced Plaintiffs and the Class to enter into a contractual relationship with Defendant.

62.     Defendant's failure to pay Plaintiffs and the Class as promised constitutes material breach of the contract.

63.     Plaintiffs and the Class members have been damaged by Defendant's actions and are entitled to be compensated for resulting damages.

## COUNT II

## COMMON LAW FRAUD

**(On behalf of the Nationwide Class, or Alternatively the New York Class)**

64.     Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

65.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

66.     Defendant made material omissions and made false statements about issuing 100% toll reimbursement.

67.     Defendant willfully failed to state material facts, and/or willfully concealed, suppressed, or omitted such material facts.

68.     These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and the Class members would rely on them.

69.     Plaintiffs and the Class members reasonably relied on these omissions and false statements, and suffered damages as a result.

## COUNT III

## NEGLIGENT MISREPRESENTATION

**(On behalf of the Nationwide Class, or Alternatively the New York Class)**

70.     Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

71.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the

members of the Class against Defendant.

72.     Defendant, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

73.     In making the representations of fact to Plaintiffs and members of the Class that Defendant offered 100% toll reimbursement as described herein, Defendant failed to fulfill its duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence.

74.     There was privity between Defendant and Plaintiffs and the Class members because Defendant entered into a contractual relationship or employer/employee relationship with Plaintiffs and the Class members.

75.     Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

76.     Plaintiffs and members of the Class relied upon these false representations and nondisclosures and were injured.

77.     As a result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered economic losses and other general and specific damages, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

**COUNT IV**

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

**(On behalf of the Nationwide Class, or Alternatively the New York Class)**

18

78.     Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

79.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

80.     Every contract contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

81.     Defendant breached the covenant of good faith and fair dealing by, *inter alia*, supplying false information and failing to issue full reimbursement of tolls paid by Plaintiffs and Class members when such was reasonably expected.

82.     Defendant acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT V

## UNJUST ENRICHMENT

### (On behalf of the Nationwide Class, or Alternatively the New York Class)

83.     Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This claim is plead in the alternative to the contract based claims.

84.     Plaintiffs and the Class members conferred a benefit on Defendant.

85.     Defendant had knowledge that this benefit was conferred upon them.

86.     However, Defendant has breached their agreement with Plaintiffs and the Class by failing to make full reimbursement of tolls to the Class. Such breaches of the agreement have

caused the Class millions of dollars in damages.

87.     Defendant has been unjustly enriched at the expense of Plaintiffs and the Class members, and their retention of this benefit under the circumstances would be inequitable. Defendant should be required to make restitution.

## COUNT VI

## VIOLATION OF NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, N.Y. GBL § 349

### (On Behalf of the New York Class)

88.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

89.     Plaintiffs bring this claim individually and on behalf of the other members of the New York Class for Defendants' violations of NY GBL § 349.

90.     Defendants' business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

91.     The practices of Defendants described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

   a.   Defendants engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information, which did, or tended to, mislead Plaintiffs and the New York Class about facts that could not reasonably be known by them;

b.  Defendants knowingly and falsely represented that it issues 100% toll reimbursement with an intent to cause Plaintiffs and members of the New York Class to believe that they received full reimbursement of tolls paid by themselves even though they did not;

c.  Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

d.  Defendants caused Plaintiffs and the New York Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

e.  Defendants failed to reveal material facts to Plaintiffs and the New York Class with the intent that Plaintiffs and the New York Class members rely upon the omission;

f.  Defendants made material representations and statements of fact to Plaintiffs and the New York Class that resulted in Plaintiffs and the New York Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

g.  Defendants intended that Plaintiffs and the members of the New York Class rely on their misrepresentations and omissions.

92.     Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

93.     Defendants' actions impact the public interest because Plaintiffs and members of the New York Class were injured in exactly the same way as thousands of others working as Uber drivers as a result of and pursuant to Defendants' generalized course of deception.

94.    By committing the acts alleged in this Complaint, Defendants have misled Plaintiffs and the New York Class into believing that they received full reimbursement of tolls they paid out of pocket. This is a deceptive business practice that violates NY GBL § 349.

95.    The foregoing deceptive acts, omissions and practices were consumer-oriented because they were neither private nor unique to the parties and had a broader impact on consumers at large. By engaging in such deceptive acts, Defendant was able to operate at a lower cost and take away market share from its competitors and attract more consumers.

96.    The foregoing deceptive acts, omissions and practices set forth in connection with Defendants' violations of NY GBL § 349 proximately caused Plaintiffs and other members of the New York Class to suffer actual damages in the form of, *inter alia*, amounts of tolls unpaid by Defendant. Plaintiffs and other members of the New York Class are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiffs as the Class representative and their counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and the Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.     grant appropriate injunctive and/or declaratory relief, including, without limitation, an order enjoining Defendant from disbursing, transferring or disposing of any assets including the payments received from the Class, requiring them to provide a full accounting with respect to Plaintiffs and Class members, and requiring Defendant to, at a minimum, reimburse Plaintiffs and Class members for the unpaid amounts of tolls that they paid out of pocket;

F.     award reasonable attorneys' fees and costs; and

G.     grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated: February 4, 2016                    Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 1976)
Shanshan Zheng (SZ 3301)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By: _____ /s/ C.K. Lee _____
              C.K. Lee (CL 4086)